Ernest Barragan LOPEZ, Petitioner,

v.

Peter J. PITCHESS, Sheriff of Los Angeles County, State of California, Respondent.

Willard Arthur WINHOVEN, Petitioner,

v.

Peter J. PITCHESS, Sheriff of Los Angeles County, State of California, Respondent.

Nos. 66–59, 66–1641.

United States District Court
C. D. California.
Jan. 20, 1967.

Ernest B. Lopez and Willard A. Win-
hoven, pro. per.

Thomas C. Lynch, Atty. Gen. of State of California, by Bradley A. Stoutt, Deputy Atty. Gen. of State of California, Los Angeles, Cal., for respondent.

## MEMORANDUM AND ORDER DENYING PETITIONS FOR WRITS OF HABEAS CORPUS.

CRARY, District Judge.

Petitioners Lopez (66–59–EC) and Winhoven (66–1641–EC) were both found guilty of murder and attempted murder by a California court. They were tried together under the same Information.

On January 14, 1966, petitioners jointly filed a petition for Writ of Habeas Corpus (66–59–Y) urging as grounds for the said Writ:

(1) That the petitioners were deprived of their right to aid of counsel at a police line-up after arraignment, although their counsel had requested to be present.

(2) Unlawful search and seizure of articles admitted in evidence which were found in the Nash car occupied by the petitioners just prior to their arrest.

(3) Unlawful order made by the State trial court requiring petitioners to give to the District Attorney the names of petitioners' alibi witnesses.

(4) Alleged error on the part of the trial court in admitting evidence of unrelated collateral crimes as to which petitioners had not been charged.

(5) Improper admission into evidence of notes made by the People's witness, Luna, an informer, who was placed in the cell of petitioner Lopez by the authorities. Petitioners allege these notes constituted a confession by Lopez, obtained in violation of his constitutional rights.

The joint petition provides, under the heading "Statement of Joinder", that to avoid separate petitions " * * * the following matter will be set out in the singular person, with notation and explanation where the matter applies separately to either petitioner" (Pg. 2, lines 2–5).

The said joint petition was denied by United States District Judge Yankwich in February, 1966, on the grounds the petitioners had not exhausted their rights in the State courts.

On October 11, 1966, petitioner Lopez filed a second petition for Writ of Habeas Corpus wherein he relies on the grounds set forth in the joint petition filed January 14, 1966 (Paragraph 10, page 3).

On October 13, 1966, petitioner Winhoven filed a second petition wherein he relies on the joint petition filed on January 14, 1966, and grounds set forth as a part of paragraph 10 of his second petition, some of which are covered in the said joint petition. Winhoven, in addition to the grounds noted in the joint petition, urges:

(a) That his constitutional rights were violated by refusal of the trial court to appoint counsel to assist and aid him in the preparation of his defense and trial of the case after he was substituted in the case in propria persona, at his request and insistence when the case was called for trial.

(b) Unlawful search of Winhoven's motel room, which was located several miles from the scene of the arrest, and seizure of articles found in the room.

(c) That he was unlawfully tried for "conspiracy" not included in the Information.

(d) Error in admission into evidence against him of testimony and notes of informer Luna, a fellow prisoner of Lopez who was "planted" in Lopez's jail cell.

(e) Delay of disclosure to petitioner by the State of the names of certain State witnesses and notes or statements of said witnesses.

Winhoven urged that the above irregularities violated his rights under the

4th, 5th, 6th and 14th Amendments of the United States Constitution.

As noted above, petitioners were each found guilty of murder and four counts of attempted murder and both were sentenced to death.

The opinion of the Supreme Court of California, on the appeal of petitioners to that court, People v. Lopez and Winhoven, is reported in 60 Cal.2d 223, 32 Cal.Rptr. 424, 384 P.2d 16 (Aug. 1963). Certiorari was denied by the United States Supreme Court, 375 U.S. 994, 84 S.Ct. 634, 11 L.Ed.2d 480.

Petition of the co-defendants for Writ of Habeas Corpus to the Supreme Court of California was granted as to penalty trials only. In re Lopez and Winhoven, 62 Cal.2d 368, 42 Cal.Rptr. 188, 398 P.2d 380 (Jan. 1965). The matter was remanded for new penalty trials because of error in the penalty aspects of the trial in the first instance. The Supreme Court of the United States denied certiorari, 384 U.S. 1016, 86 S.Ct. 1929, 1930, 16 L.Ed.2d 1038. The penalty re-trial of Lopez resulted in the reduction of sentence to life imprisonment. Winhoven was again sentenced to death and his case is now on appeal. Most of the issues raised by the pending petitions for Writs of Habeas Corpus were fully considered by the Supreme Court of California on appeal, 32 Cal.Rptr. 424, or on the petition for Writ of Habeas Corpus, 42 Cal. Rptr. 188.

■ Considering the first grounds urged in the joint petition, which concerns lack of aid of counsel at a police line-up, the California Supreme Court, at pages 434–435 of its opinion, reviews the facts, which are not in dispute, and holds:

"We do not believe that the accused has a right to have counsel present during purely investigatory activities which are not designed to elicit information from the accused or otherwise impinge upon his constitutional rights." (Page 435)

See also Gilbert v. United States, 366 F.2d 923, 934–937 (9 C.A. Sept. 1966).

■ The second grounds of the joint petition asserts unlawful search and seizure of articles in the car which was driven by Winhoven and in which Lopez was a passenger before the arrest. In his instant petition, Winhoven also asserts unlawful search of his motel room and seizure of articles therein. These points will be discussed together. The issue of unlawful search and seizure of articles in the car is discussed by the California court at pages 432–434 of its opinion. After setting forth the facts, which are not in dispute, surrounding the search of the Nash car (page 432) and the petitioner's contention re same, the court, at pages 433–434, states:

"The contention is without merit. Preliminarily, it should be pointed out that defendants did not object on this specific ground either at the preliminary hearing or during trial. However, during pretrial defendants did move to suppress the evidence taken from the Nash at the time of their arrest. In opposition to this motion the prosecuting attorney filed an affidavit incorporating certain testimony given at the preliminary hearing. At the preliminary hearing Officer Ragusa testified that he had seen a car similar to the Nash in the vicinity of the Brundage store on the morning that it was robbed. He did not see any other cars in the area, nor did he know at that time that the Brundage store had been burglarized. However, Officer Ragusa further stated that before defendants were ordered to get out of the car, Officer Mobrice had noticed the red crowbar and stated: 'This crowbar has red paint on it and matches the red paint transfer used in the burglary of the Brundage Hardware Store.'

"The police officers were amply justified in stopping defendants' automobile because of the traffic violation. After so doing, they noticed the hereinabove mentioned red painted crowbar that Officer Mobrice suspected might have been used in connection with the Brundage burglary. Under

those circumstances, the police had probable cause to arrest defendants and to make a reasonable incidental search." (Citing numerous California cases.)

It appears from the record there was probable cause for the search of the car and the seizure of the crowbar, guns, masks, wigs, and so forth, found therein. The facts re the search of the car, as set forth by the California Supreme Court, pages 432–434 of its opinion, are supported by the record and are not controverted in any substantial detail. It is noted that after stopping defendants' car for the running of a red light, Officer Mobrice saw, through the car window, a red painted crowbar protruding from under the back seat of the car, which crowbar, he suspected, had been used in the robbing of the Brundage Sporting Goods Store. Removal of the crowbar disclosed a revolver and on further search of the car the officers found many items which were introduced in evidence and discussed hereinafter.

In Price v. United States, 348 F.2d 68, 69, 121 U.S.App.D.C. 62 (Oct. 1965), defendant was arrested on suspicion of robbery after officers, without entering the car, saw a crowbar, other tools, and two rolls of quarters, in a car suspected of having been used in the robbery of a store. These articles were noted in the car before the defendant entered same. The arrest followed defendant's entry of the car and check of his identification by the officers. The search and resulting seizure was held to have been valid.

Appellant in the Price case cites Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (March, 1964), wherein the search of the car was held not incident to the arrest of the defendant for vagrancy, as the car which defendant was in when arrested was not searched until it had been driven to the police station and thereafter towed to a garage. The articles seized were not visible at the time of the arrest and had nothing to do with the charge of vagrancy.

In Busby v. United States, 296 F.2d 328, 329–330 (9 C.A., Nov. 1961), the defendant was stopped by Officer Ryder for having no light over his license plate on his car. Busby could not produce a driver's license. A second officer, McDonald, who arrived on the scene, had received a radio call advising of two hold-up suspects being in the area.

When Officer Ryder stopped the car he had no knowledge that the occupants had committed any offense other than the motor vehicle violation (page 330) and Officer McDonald testified that before he ordered the defendants out of the car he had no knowledge they had committed a crime or were then committing a crime (page 330).

When the defendant stepped out of the car the dome light went on disclosing a sawed-off shotgun in the back of the car partially under the seat. The court held the shotgun evidence was not obtained by an unlawful search and seizure in the circumstances (pages 331–332).

The defendants in Wilson v. Porter, 361 F.2d 412 (9 C.A., May, 1966), were stopped at 3 a. m. for a routine check. No traffic violation was involved. One of the officers shone his flashlight into the car and saw what appeared to be a gun barrel protruding from under the seat (page 414). The officer reached under the seat and found a .22 revolver. The defendants were at that time arrested. The ruling of the District Court that the gun was the subject of unlawful search and seizure was reversed by the Court of Appeals (pages 415–416).

Defendant Winhoven makes the further contention that the keys to his motel room were taken from him by the police and his room, which was located some five miles from where he was arrested, was searched and a .308 Remington rifle, an Ithica shotgun, and some clothing were taken by the police (R.T. 1298–1299) and introduced into evidence against him.

The rifle and shotgun were taken by Officer Mobrice but were not offered in evidence. See the list of People's exhib-

its as indexed in Reporter's Transcript, Volume II, pages VII to XII.

At lines 27–29, page 9, of their joint petition, the petitioners state that the articles obtained by unlawful search and seizure are in evidence as People's Exhibits 10 through 22 and 95 through 110. No items taken from the motel room appear in those Exhibits. People's Ex. 92 is a "Remington rifle" but on page 104 of the Reporter's Transcript—Supplemental, October 10, 1961, March 17, 1961, it is stipulated that the "Remington rifle was in truth and fact a Remington shotgun" (Lines 6 to 25, page 104). In any event, it is not contended that it was the gun taken from Winhoven's motel room.

■ Petitioners' third ground is of no avail to them because, although the court made an order requiring the production of the names and addresses of persons to be called as *alibi witnesses* for the petitioners together with notes and written statements of such witnesses, no names of alibi witnesses or notes or statements of such witnesses were given by the petitioners, or either of them, to the State. As stated by the California court at page 436 of its opinion:

"Neither the record nor the briefs indicate that any information was given to the People as a result of the subject order. Nevertheless, defendants contend that the granting of the order denied them a fair trial.

"The contention is without merit. * * * It is manifest that the mere granting of the order did not deprive defendants of a fair trial."

■ The fourth point urged by petitioners, to wit, error in admitting evidence of unrelated, collateral crimes as to which petitioners had not been charged, is not well taken. The subject crimes referred to are enumerated by the California court at page 439 of its opinion. The court then goes on to hold that the evidence of said other crimes was properly admitted, saying at page 439:

"This evidence of other crimes was introduced by the People to show a sustained and continuing course of criminal concert between Lopez and Winhoven. The subject evidence was relevant to the issue of the identity of the masked robber who was directing Winhoven at MORE, Inc. 'It is settled in this state * * * that except when it shows merely criminal disposition (People v. Cook [1905], 148 Cal. 334, 340 [83 P. 43]; People v. Glass [1910], 158 Cal. 650, 658 [112 P. 281]), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. "The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not." ' (People v. Peete (1946) 28 Cal.2d 306, 314–315 [1], 169 P.2d 924.)"

■ Petitioners' fifth ground concerns the testimony and notes of informer Luna, a fellow prisoner of Lopez, who was planted in Lopez's jail cell and who testified as to conversations with Lopez that were damaging to the petitioners. It is contended that these statements of Lopez constituted admissions and confession which were obtained by trickery, without the presence of counsel and in violation of the 5th and 14th Amendments of the United States Constitution. The Supreme Court of California, at pages 438–439 of its opinion, treats this point in detail, stating that there was no mental or physical coercion or invasion of privacy or inducement by Luna or anyone else; that Luna might properly testify, as the defendant Lopez " * * * assumes the risk that the person to whom he makes damaging statements may repeat those statements in court to be used against the declarant. (Lopez v. United States (1963) 373 U.S.

427, 83 S.Ct. 1381, 10 L.Ed.2d 462.)" (Page 438). The notes made by Luna of the conversations with Lopez in the jail cell were introduced into evidence at the trial without objection (page 439), (R.T. 1449, 1455, 1460, 1807).

■ Referring to the separate grounds asserted by petitioner Winhoven in his petition filed October 13, 1966, the refusal of the trial court to appoint counsel to assist him, after he substituted himself in the case in propria persona, is discussed by the California Supreme Court at pages 442–443 of its opinion on the appeal. As stated by the court and as it appears from the record:

> "Although Winhoven now asserts that he was incapacitated by his heart condition, it appears that he was competent to and did actively represent himself. He presented numerous objections throughout the trial, some of which were sustained. Moreover, the court was continuingly solicitous of his rights and offered advice to Winhoven whenever it appeared proper to so do. Under these circumstances, there was no denial of a fair trial because of the court's ruling on Winhoven's request for assistance by subservient counsel. Winhoven's contention that his testimony amounted to a confession, hence was tantamount to a plea of guilty, and that such a plea cannot be accepted without the attendance of counsel is patently untenable."

It is also to be noted that Winhoven sought to have counsel *assist*, not represent him. The California rule is clear on this point (page 442).

The conclusions of the California court on this issue are supported by the record. Winhoven's refusal to have a lawyer appointed to represent him, R.T., page 3, line 21—page 4, line 13; the court again urges Winhoven to have a lawyer appointed to represent him, R.T., page 23, line 21—page 25, line 25; Winhoven's request for a lawyer to assist him, R.T., page 67, line 25—page 68, line 17; heart attack, R.T., page 1324, lines 2 to 19; health of Winhoven, R.T., pages 494–496, 2723–2725; inability of Winhoven to pronounce words, mental alertness, perfectly capable of going ahead, R.T., page 2175, line 3—page 2176, line 5.

Winhoven's contention that there was unlawful search of the Nash car and his motel room, and unlawful seizure of guns from the room and of articles from the car, has been heretofore discussed. None of the articles seized in the motel room were offered in evidence.

■ Winhoven also urges he was tried for "conspiracy", an offense not included in the Information, and the court erroneously admitted evidence of collateral crimes as to which he was not charged. As pointed out by the California court on page 439 of its opinion on the appeal:

> "Despite defendants' protestations to the contrary, it is long and firmly established law that conspiracy need not be pleaded as a basis for the reception of evidence which shows the existence of one." (Citing California cases)

The matter of the admission of collateral crimes has already been examined.

■ Delay in the disclosure to petitioners of the names of persons who the People asserted were associated with Lopez in the MORE holdup is urged by Winhoven as constituting a violation of his constitutional rights. The trial court properly withheld from the petitioners the names of Government witnesses who Lopez requested to participate with him in the MORE robbery, by reason of the likely danger to such witnesses which the court found to exist, and to keep the testimony of those witnesses confidential. See pages 436–437 of the opinion of the California Supreme Court.

By petition for Writ of Habeas Corpus to the Supreme Court of California, petitioners contended that they were entitled to relief under the rules governing right to counsel as announced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12

L.Ed. 2d 246, and People v. Dorado, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361, which would have barred the testimony and notes of the witness Luna as to his conversations with Lopez in Lopez's jail cell.

The California Supreme Court held that Massiah could not serve as the basis for collateral attack on judgments which were final prior to the decree of the United States Supreme Court in that case, and that Escobedo and Dorado were of no effect on cases final before the decision of the Supreme Court in the Escobedo case. In re Lopez and Winhoven, 42 Cal.Rptr. 188, 191–198.

▉ The opinion in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, clearly states that neither Escobedo, supra, nor Miranda v. State of Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, are to be applied retroactively and are effective only after those decisions were announced, to wit, June 22, 1964 and June 13, 1966, respectively.

Winhoven now urges that the California court ruled only as to the claim of Lopez on the petition for Writ of Habeas Corpus; that Lopez therein claimed to be entitled to counsel before or during his statements to Luna in the jail cell, which, he says, amounted to a confession. Winhoven's present position is that he is not claiming right to counsel as barring the testimony of Luna re Lopez's statements to him. He now contends that the statements of Lopez to Luna were hearsay and inadmissible as statements of his co-defendant against him, after arrest and after termination of any claimed conspiracy between Lopez and himself. He relies on Wong Sun v. United States, 371 U.S. 471, 488–490, 83 S.Ct. 407, 9 L.Ed.2d 441. See also Krulewitch v. United States, 336 U.S. 440, 443–445, 69 S.Ct. 716, 93 L.Ed. 790.

The testimony of Luna as to his conversations with Lopez in jail at Bakersfield, California, appear on direct testimony in the Reporter's Transcript at pages 1446–1467.

▉ The testimony and notes of Luna and their admissibility have been heretofore referred to. Any violation of the hearsay rule as to Winhoven would be an error at law in the admission of evidence, but would not be a violation of his constitutional rights. Habeas Corpus proceedings may not be used as a substitute for appeal. Rhay v. Browder, 342 F.2d 345, 349 (9 C.A. 1965); Hickock v. Crouse, 334 F.2d 95, 100 (10 C.A. 1964); and United States ex rel. Saunders v. Myers, 276 F.2d 790, 791–92 (3 C.A. 1960).

Error in admitting evidence of prior, unrelated crimes has been held not to constitute a basis for Federal Habeas Corpus. Peterson v. Tinsley, 331 F.2d 569 (10 C.A. 1964).

As stated by the Court of Appeals, 9th Circuit, in Chavez v. Dickson, 280 F.2d 727, 735–736:

"It is only where criminal trials in state courts are conducted in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice that due process is offended and that federal court interference is warranted. Lisenba v. People of State of California, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166."

It does not appear to this court in the case at bar that the admission of the hearsay statements of Luna, and his notes of his conversations with Lopez in jail, in the circumstances, was such a disregard of that fundamental fairness essential to the concept of justice as to constitute a violation of due process of law as to petitioner Winhoven.

It is also to be remembered that Winhoven was represented on appeal by counsel, and the point he now makes, as to the admission against him of the hearsay testimony of Luna, was not argued on appeal nor was it raised by objection at the trial (R.T. 1446–1485, 1491–1500, 1511, 1519, and 1807).

Not all of the issues raised by the petitioners in their instant petitions were urged in their appeal from the judg-

**144**

ments in the case, nor did the petitioners urge as to all of the alleged errors, that they resulted in the violation of their rights under the United States Constitution.

The joint petition for Writs of Habeas Corpus to the Supreme Court of California (42 Cal.Rptr. 188) concerned only the issue of the admissibility of the statements of Luna, the fellow prisoner-informer. The State also points out that Winhoven's appeal from the second sentence to death, following the re-trial of the penalty issue, has not been determined and that the appeal could result in reversal of both the guilt and penalty issue.

 Although the rights of the petitioners have not been exhausted in the State courts, as to all of the issues raised, the court concludes that the petitions for Writ of Habeas Corpus should be denied, which makes moot the question of the exhaustion of remedies. The denial of the petitions herein is permissible although State remedies may not have been exhausted. Commonwealth of Pennsylvania ex rel. Craig v. Moroney, 348 F.2d 22, 33 (3 C.A. 1965); and In re Ernst's Petition, 294 F.2d 556, 561–562 (3 C.A. 1961).

Most of the points urged by petitioners on appeal to the California Supreme Court (32 Cal.Rptr. 424) concern issues of law which are fully discussed by that court in its opinion. Few issues of fact are involved and the findings of the California Supreme Court, as recited in its opinion, are supported by the record. There is no substantial controversy as to the evidence applicable to the issues in the points raised by the petitions herein.

This court finds that an evidentiary hearing is not necessary to properly serve the ends of justice under the rule as announced in Townsend v. Sain, 372 U.S. 293, 312–313, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963).

For the reasons set forth hereinabove, the petitions for Writs of Habeas Corpus of the petitioners, Ernest Barragan

Lopez and Willard Arthur Winhoven, filed October 11, 1966, and October 13, 1966, respectively, are hereby ordered denied. Both of the said petitions were assigned to the calendar of the Honorable E. Avery Crary on January 10, 1967.

This Memorandum Opinion shall serve as Findings of Fact and Conclusions of Law to the extent required by Rule 52(a) of the Federal Rules of Civil Procedure.