Jesse J. C. EDWARDS, Petitioner,

v.

Elmer CADY, Warden, Waupun State Prison, Respondent.

Civ. A. No. 69-C-464.

United States District Court,
E. D. Wisconsin.

Oct. 6, 1970.

Steven R. Duback, Milwaukee, Wis., for petitioner.

William A. Platz, Asst. Atty. Gen., Madison, Wis., for respondent.

## OPINION AND ORDER

REYNOLDS, District Judge.

On October 7, 1969, Jesse J. C. Edwards, a prisoner at the Wisconsin State Prison at Waupun, petitioned this court for a writ of habeas corpus pursuant to § 2241, et seq., Title 28, United States Code of Laws. Because the petition raised substantial constitutional questions, a response was ordered from the defendant Elmer Cady on that same day, October 7, 1969. Attorney Steven R. Duback was appointed to represent the petitioner. A hearing was held on the petition on April 9, 1970.

On May 2, 1968, petitioner was convicted in the County Court of Milwaukee County, Wisconsin, of possession of a dangerous drug in violation of § 151.07, Wisconsin Statutes. Thereafter, on May 13, 1968, petitioner was sentenced by said court to an indeterminate term of not more than one year, such sentence to run consecutively to a sentence for an indeterminate term of not more than three years which was imposed by the Circuit Court of Milwaukee County, Wisconsin, on May 10, 1968, upon finding the petitioner guilty of armed robbery. It is the sentence imposed on May 13, 1968, for possession of a dangerous drug which is the subject of this petition for writ of habeas corpus.

## FACTS

On Sunday night, July 2, 1967, the petitioner was at a tavern known as Monreal's Lounge which is located at 16th and National Avenue in the City of Milwaukee, Wisconsin.

On this same evening in July 1967, officers Hanke and Stevens of the Milwaukee Police Department were on duty and riding in their patrol car in the City of Milwaukee. They received a call from police headquarters informing them that there was a man named Jesse Edwards at Monreal's Lounge who was wanted on an outstanding arrest warrant for delivery of dangerous drugs. Officers Hanke and Stevens proceeded to

Monreal's Lounge where, upon arriving, they asked the doorman if Jesse Edwards was present. The doorman directed the officers to the petitioner who was standing at the bar inside Monreal's Lounge talking with a young woman.

The officers approached the petitioner and asked him to identify himself, stating that there was a warrant outstanding for a Jesse Edwards. The petitioner then produced identification indicating that he was Jesse Edwards. The officers then accompanied the petitioner outside where he was frisked for weapons. The frisk consisted of a pat-down of the petitioner's outer clothing. No weapons were found during this limited search. The officers, together with the petitioner, then re-entered Monreal's Lounge and one of the officers, officer Stevens, placed a call from a pay telephone to police headquarters. The purpose of the call was to obtain further information about the individual named in the warrant; that is, to double-check and assure themselves that they had the right "Jesse Edwards." Upon completion of the telephone call, the petitioner was placed under arrest, and a more detailed search of his person was conducted by officer Hanke. This new search consisted of searching the pockets of the petitioner's clothing. Officer Hanke, upon searching the left trouser pocket of the petitioner, found two white pills which were taken from the petitioner. These pills were later to be the subject of an FBI laboratory report which served as the basis for the petitioner's subsequent conviction for possession of a dangerous drug, which conviction he is challenging by this petition.

### ISSUES

There are three principal issues in this case:

1. Was petitioner's person searched incident to a valid and proper arrest, i. e., was there probable cause to arrest the petitioner?

2. If the petitioner was searched incident to a valid and proper arrest, was the search nonetheless in violation of the Fourth Amendment because of its scope?

3. Has the petitioner adequately exhausted all possible state court remedies available to him?

The first issue is largely determined by the state of the evidence in the record which formed the basis of the preceding findings of facts. The second issue is the crux of the case and is discussed at length below. The third issue is not reached because of the conclusions with regard to the first two issues.

### 1. THE ARREST

The petitioner's contentions with regard to the propriety of the arrest can be briefly stated as follows: Petitioner argues, in effect, that the officers did not receive a call detailing the existence of an outstanding warrant, naming the petitioner as the wanted man, in the patrol car before arriving at Monreal's Lounge but, rather, received that information later upon telephoning police headquarters from Monreal's Lounge. The petitioner further contends that he was searched *during* this telephone call placed by the officers from Monreal's Lounge. Hence, the petitioner argues that at the time he was searched and the pills discovered, there was, at that time, no probable cause to arrest him and, therefore, the search was not incident to a valid arrest.

"Probable cause to arrest means evidence that would warrant a prudent and reasonable man (such as a magistrate, actual or hypothetical) in believing that a particular person has committed or is committing a crime." Concurring opinion of Mr. Justice Harlan, Sibron v. New York, 392 U.S. 40, 75, 88 S.Ct. 1889, 1908, 20 L.Ed.2d 917 (1968).

■ The petitioner has failed to prove that the officers did not receive the call informing them of the outstanding arrest warrant before they arrived at Monreal's Lounge. It is not disputed that there actually was such a warrant outstanding. Both officers testified un-

der oath that they received such a call while riding in their patrol car. I find that having been informed prior to their arrival at Monreal's Lounge of an outstanding arrest warrant naming the petitioner, the officers had probable cause to effect the arrest. The fact that the officers took an extra step to assure themselves that they had the right Jesse Edwards does not alter the existence of probable cause to arrest him before that call was made.

█ Petitioner's further contentions with regard to the timing of the search, which also involve questions of fact, depend upon a conclusion that no probable cause existed at the time of the search. As indicated above, I find that the search took place after the conclusion of the telephone call made from Monreal's Lounge. However, even were I to find that the petitioner had been searched *during* the telephone call made to double-check the petitioner's identity, the search therefore occurring moments *before* his arrest rather than moments *after*, I do not believe such a finding would lead to a different result. The officers had probable cause to arrest the petitioner before placing the telephone call. "Even if the formal arrest was not made until after the search, the search will be upheld so long as there is probable cause for an arrest before the search is begun." Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305, 308 (1967). See also United States v. Skinner, 412 F.2d 98, 103 (8th Cir. 1969), and cases cited therein. Regardless of whether the petitioner was searched during or after the telephone call from Monreal's Lounge, probable cause to arrest existed prior to, and independent of, the search. Hence, I find that petitioner was searched incident to a valid and proper arrest.

## 2. THE SEARCH

The petitioner maintains that even if he was searched incident to a valid arrest, the search of his pockets at the time of his arrest was constitutionally impermissible. He argues, in effect, that the only justification for a search in this case was the need to protect the arresting officers and that that justification was no longer present after the "frisk" had been made. The petitioner's position is that since the offense for which he was arrested consisted of a consummated act; that is, the delivery of drugs at a previous time, none of the typical justifications for a search incident to arrest were present because there could be no "fruits" or "evidence" or "contraband," etc., because the drugs had already been delivered, as the officers knew from the warrant. For reasons stated below, I find the petitioner's contentions to be in error and conclude that the search made of his clothing incident to his valid arrest was permissible.

It may well be, as Judge J. Skelly Wright suggests in his dissent to Worthy v. United States, 133 U.S.App.D.C. 188, 409 F.2d 1105, 1110–1114 (1968), that the reasoning and approach of recent Supreme Court cases indicates that a warrantless search incident to arrest is not to be viewed automatically as reasonable absent certain justifications for the search. Recent United States Supreme Court decisions evidence a concern for the *scope* of the search conducted and the need to relate that scope to the initial justifications and purposes for searching in the first place. However, the justifications for initiating a search incident to arrest usually include within the permissible scope that flows from these justifications the search of the person of the arrestee. In Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), the Court said:

"* * * Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 392 [34 S.Ct. 341, 344, 58 L.Ed. 652] (1914);

Agnello v. United States, 269 U.S. 20, 30 [46 S.Ct. 4, 5, 70 L.Ed. 145] (1925). * * * "

The *Preston* court pointed out that the justification for the search was the need to prevent the destruction of evidence within the arrestee's control and the protection of the arresting officers. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), two "stop and frisk" cases, the Supreme Court articulated the following standard:

"* * * And in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, supra, 392 U.S. at pages 19–20, 88 S.Ct. at page 1879.

However, *Terry* and *Sibron* dealt with searches in cases where the officer lacked probable cause to arrest. The *Terry* court, referring to searches incident to a valid arrest, stated:

"The former, [searches incident to arrest] although justified in part by the acknowledged necessity to protect the arresting officer from assault with a concealed weapon, Preston v. United States, 376 U.S. 364, 367 [84 S.Ct. 881, 883, 11 L.Ed.2d 777] (1964), is also justified on other grounds, *ibid.*, and can therefore involve a relatively extensive exploration of the person. * * * " Terry v. Ohio, supra, at page 25, 88 S.Ct. at page 1882.

In the recent case of Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034,

2039, 23 L.Ed.2d 685 (1969), the Supreme Court applied the standard from *Terry* and *Sibron* that " '[t]he scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible' " to an arrest and incident search situation. While *Chimel* has not been given retroactive effect by the Supreme Court and the Seventh Circuit has likewise held *Chimel* not to apply to arrests made before June 23, 1969,[1] the approach of the court in *Chimel* is illustrative of the present problem. In referring to the analysis quoted above from *Terry* and *Sibron*, the Court stated:

"A similar analysis underlies the 'search incident to arrest' principle, and marks its proper extent. When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. * * * In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. * * * There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— * * * ." Chimel v. California, supra, at pages 762–763, 89 S.Ct. at page 2040.

■ It is not necessary, in my view, to embrace the rather broad holding of those cases from other circuits which appear to hold that *any* search of the person of an arrestee is reasonable so long as it is incident to arrest.[2] I con-

---

1. See United States v. Blassick, 422 F.2d 652 (7th Cir. 1970), cited in United States v. Nasse, 432 F.2d 1293 (7th Cir., July 31, 1970).

2. See Charles v. United States, 278 F.2d 386, 388 (9th Cir. 1960), wherein it is stated:

"It is beyond dispute that an officer making a valid arrest may search the

person of the accused as an incident of his arrest. * * *

"* * * That a search is incident to a valid arrest saves it from proscription. The apparent reasoning behind this principle is that once a valid arrest is made, the privacy of the accused has for the most part been lawfully destroyed. * *

"* * * it seems to us that a search

clude that there was ample justification for initiating a search incident to this particular arrest. This justification encompasses more than merely the protection of the arresting officers. Hence, a search beyond that conducted to find weapons (assuming the adequacy of a "frisk" for that purpose) was clearly justified and permissible in scope. Petitioner was arrested for a prior delivery of drugs. This fact does not, as petitioner appears to argue, lead to the conclusion that no other evidence of the offense could exist besides the drugs that were delivered. Without becoming involved in speculations as to what evidence of such an offense could possibly exist, it certainly seems reasonable that the officers could have hoped to uncover such other evidence as names and addresses of persons involved in the prior drug delivery, etc. The nature of the offense for which the petitioner was arrested, having engaged in drug traffic, is such as to justify a search of the petitioner's person incident to his arrest beyond a search merely limited to discovering weapons. I therefore conclude that the search of the petitioner's pockets was not impermissible. It follows that the pills which were discovered and seized by the arresting officers were not improperly allowed to serve as the basis of the FBI report which was used as evidence against the petitioner at trial.

## 3. EXHAUSTION OF STATE REMEDIES

Section 2254(b), 28 U.S.C., states that an application for writ of habeas corpus shall not be *"granted* unless it appears that the applicant has exhausted the remedies available in the courts of the State." (Emphasis supplied.) "This rule of exhaustion, now codified in the federal habeas statute, is rooted in considerations of federal-state comity rather than in the essential nature of the writ

of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. * * * "

or its purposes." 83 Harvard Law Review 1038, 1094 (1970).

■ There is some question in this case whether or not the petitioner has adequately exhausted all his available state court remedies. It is my belief that this issue need not be reached in this case. The federal statute says only that a writ of habeas corpus may not be *granted* until state court remedies have been exhausted. However, it does not offend the policies underlying the exhaustion requirement, in my view, to *deny* a writ of habeas corpus in a case where state remedies may not have been completely exhausted. Other federal courts, when faced with similar situations, have adopted this interpretation of the federal habeas corpus statutes and the policies which underlie them. King v. Beto, 291 F.Supp. 946, 949–950 (N.D. Tex.1968); United States ex rel. Smith v. Nelson, 275 F.Supp. 261, 268–269 (N. D.Calif.1967); Lopez v. Pitchess, 265 F.Supp. 136, 144 (C.D.Calif.1967); United States ex rel. Patrick v. Rundle, 248 F.Supp. 757, 759 (E.D.Pa.1965); United States ex rel. O'Halloran v. Myers, 244 F.Supp. 169, 170–171 (E.D. Pa.1965); Commonwealth of Pennsylvania ex rel. Craig v. Maroney, 348 F.2d 22, 33 (3rd Cir. 1965); In Re Ernst's Petition, 294 F.2d 556, 561–562 (3rd Cir. 1961). Accordingly, in light of the fact that I find that the petitioner is not entitled to relief on his petition for writ of habeas corpus, I do not consider the issue of whether or not petitioner has completely exhausted his state court remedies.

The foregoing opinion constitutes this court's findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

It is therefore ordered that the petition of Jesse J. C. Edwards for a writ of habeas corpus be and it is hereby denied.

See also United States v. Jackson, 22 F.R.D. 38 (S.D.N.Y.1958), and Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).